(95 Misc. Rep. 537)

### KUERZI v. MAIER et al.

(Supreme Court, Appellate Term, First Department. June 22, 1916.)

SALES ⊂⊃188—PRICE—DEDUCTION OF FREIGHT CHARGE—CONTRACT.

Plaintiff purchased from the defendants 1,000 bales of linters, compressed ship side New Orleans, payable by sight draft attached to the bill of lading, and, on defendants' suggestion that the linters, which were then stored at a point in Texas, uncompressed, be shipped by

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

through bill of lading direct to plaintiff's customer, defendants to deduct from its invoice the freight to New Orleans, and plaintiff's agreement thereto, defendant advised plaintiff that they had obtained a through rate, and that they would deduct 51 cents per 100 pounds to New Orleans, and in fact deducted at the rate of 49 cents per 100 pounds, when it appeared that all roads, except that on which defendants shipped, charged 61 cents per 100 pounds. *Held*, that plaintiff was not entitled to a credit at the usual rate of 61 cents per 100 pounds, but was entitled to a credit of so much of the invoice as represented the actual freight charge, including compression.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 500–503; Dec. Dig. ⚖=188.]

Appeal from City Court of New York, Trial Term.

Action by Peter A. Kuerzi against Carl Maier and Frieda Maier, doing business under the firm name and style of Marx Maier. From a judgment entered on a verdict directed in favor of the plaintiff, defendants appeal. Judgment to be modified, and affirmed, on stipulation of parties; otherwise, to be reversed, and new trial granted.

Argued June term, 1916, before GUY, BIJUR, and PHILBIN, JJ.

Frederic H. Cowden, of New York City, for appellants.
Francis J. Kuerzi, of New York City, for respondent.

GUY, J.   Plaintiff's assignor, N. P. Sloan Company, on or about July 3, 1915, purchased from the defendants 1,000 bales of clean Texas mill run linters at 4⅜ cents a pound, compressed ship side New Orleans, La.; terms, sight draft attached to bill of lading. From subsequent correspondence it appears that at the time of the purchase the linters were stored at Ft. Worth, Tex., uncompressed; that defendants suggested it would be just as well to ship the goods from Ft. Worth on a through bill of lading direct to the customer of plaintiff's assignor at Phillipsdale, R. I., the defendants, when rendering invoice, deducting for the freight from Ft. Worth to New Orleans; that plaintiff's assignor instructed defendants to ship the goods to Phillipsdale by the cheapest route possible, stating in their letter to defendants dated July 9th, "You can then bill the linters up, sending them forward freight collect, deducting freight to New Orleans, ship side compressed, from your invoice;" and in their reply of July 10th, defendants said:

"Please note I have arranged the cheapest possible freight rate with the Southern Pacific line, namely 85 cents per 100 pounds, same representing through rate from Ft. Worth to Phillipsdale, R. I., via New Orleans and New York. * * * The lot will be moved over the Southern Pacific line from Ft. Worth to New Orleans, and from there by the Southern Pacific boat to New York, and then via Providence Line to Phillipsdale, R. I. I shall bill the goods in accordance with your request, deducting freight from Ft. Worth to New Orleans, namely, 51 cents per 100 pounds. I have given instructions to consign the goods to 'order' Phillipsdale, notifying you at Philadelphia."

Before the delivery of the goods the invoice, bill of lading, and sight draft were received by plaintiff's assignor, the Sloan Company, and there was deducted from the invoice freight at the rate of 49 cents per 100 pounds from Ft. Worth, Tex., to ship side New Orleans, amounting to $2,631.88. The Sloan Company honored the draft, but disputed the correctness of the credit, claiming that, instead of deducting $2,631.88, there should have been deducted $3,243.33, the last figure be-

ing arrived at by calculating the freight from Ft. Worth to New Orleans at 61 cents per 100 pounds, instead of 49 cents, as allowed by the defendants; and the action was to recover the difference of $611.-45, with interest.

It appears from the evidence that all the railroads but one charge 61 cents per 100 pounds on linters from Ft. Worth to New Orleans; that this rate included compression by the railroads; that the road which made the lower rate, said to be 49½ cents, was the Texas Pacific; and defendants claim that the goods were sent over that line to New Orleans. Defendants' counsel tried to show what the respective freight rates were throughout the trip from Ft. Worth to Phillipsdale, and the portion of the 85-cent through rate that was paid to the respective carriers on the route; but the court sustained the objections of plaintiff's counsel to the questions, holding as matter of law from the correspondence that the defendants should have deducted 61 cents per 100 pounds from the invoice, and directed a verdict for the amount claimed in favor of plaintiff. Under the agreement of the parties the defendants were required to pay, in addition to the cost of compression, the actual expense of transporting the goods from Ft. Worth to shipside New Orleans. Accordingly plaintiff's assignor was entitled to deduct from the invoice so much of the bill as represented the actual freight charge, including compression; and the fact that the tariff rates (with the exception of the one applicable to the Texas Pacific road) would have called for a larger deduction did not authorize a credit of such tariff rate to the purchaser. If this construction be correct, it was error to exclude proof of the actual cost of carriage, including compression, from Ft. Worth to New Orleans.

If plaintiff does not contest the correctness of that claim, and the parties will so stipulate, judgment may be entered for the plaintiff for the difference between that rate and the 49½ cents which defendants mistakenly deducted, with appropriate costs in the court below, and, as so modified, the judgment may be affirmed, without costs of this appeal. Otherwise, it must be reversed, and a new trial granted, with costs to appellant to abide the event.

PHILBIN, J., concurs.

BIJUR, J. (concurring). Under the original contract between the parties, plaintiff's assignor, the Sloan Company, was to pay a fixed price for the cotton delivered, compressed, at the ship side New Orleans. As the cotton was stored uncompressed at Ft. Worth, Tex., it followed necessarily that defendants were to pay the cost of compression and shipment to New Orleans. From the nature of the agreement, also, it is evident that it was of no interest to the Sloan Company how large or how small might be the freight rate to New Orleans which defendants were bound to pay. Plaintiff's interest under the contract lay solely in having the cotton delivered compressed at the ship side New Orleans. This, then, was the situation when the agreement was modified by the letter of defendants to the Sloan Company from which I extract the following:

. "As I understand, you wish the goods shipped to New York, and the through rate, according to information received here from Southern Pacific R. R., will be 71 cents. Therefore it will be cheaper for you if the goods are shipped on a through bill of lading to New York, than from Ft. Worth to New Orleans, and then from New Orleans to New York. It would be just as well to ship the goods from Ft. Worth on a through bill of lading direct to your customer, and when rendering you invoice I will deduct for the freight from Ft. Worth, Tex., to New Orleans, La."

In response thereto the Sloan Company wrote and wired defendants to ship the cotton to Phillipsdale, R. I. (rather than New York), by cheapest route. The through rate by this route was 85 cents, and defendants contend that they were bound to pay only the pro rata portion of that rate, which was apportioned to the carriers for compression and transportation from Ft. Worth to New Orleans. When testimony as to the amount so apportioned was tendered by the defendants, the learned judge below excluded it on the ground that it—

"cannot have any possible bearing on the question of what you [defendants] are required to deduct under the agreement by which you agree to credit the plaintiff's assignor with the rate from Ft. Worth to New Orleans, ship side."

As the contract stood originally, the Sloan Company was entitled to demand that the cotton be delivered compressed at the ship side New Orleans. The instruction to defendants to ship the cotton through to Phillipsdale, R. I., manifestly disposed of the requirement that it be delivered at New Orleans as completely as if the plaintiff had directed defendants not to move it at all from Ft. Worth, or to ship it to St. Louis or some other point, to which transportation to New Orleans was not involved at all. In other words, the term of the contract requiring delivery at New Orleans and payment by the defendants for compression and carriage to that point as a terminus was abandoned by mutual consent. It would, of course, have been simpler and better had the parties made an agreement expressly determining their several rights and obligations under the modified agreement; but in the absence of express provision we are bound to give the contract a reasonable interpretation and imply those terms which, in the light of all the circumstances, it can be reasonably inferred that the parties intended to impose. The arrangement for the through shipment to Rhode Island was manifestly in the interest of economy and for the benefit of both parties. The Sloan Company had no desire to have the cotton stopped and stored in New Orleans, with the necessity on its part of thereafter paying the local rate from that point to Phillipsdale, R. I., and the defendants, of course, had no interest in the shipment at all, except to reduce so far as possible the expenses of compression and transportation to the point at which they had agreed to deliver it.

I think, therefore, that the modification expressed by the parties carried with it the implication that each should pay its appropriate pro rata of the through rate as apportioned between the carriers. Defendants claim that this pro rata for compression and carriage from Ft. Worth to New Orleans was 51 cents, and the testimony offered by them on that point should have been admitted.